**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-60458
Summary Calendar

_____

Thelma JAMISON, D.O.,

Plaintiff - Appellant,

VERSUS

COASTAL FAMILY HEALTH CENTER, INC., a Mississippi Non-Profit Corp., and Kathryn
SHANKS, Executive Director

Defendants - Appellees.

_____

On Appeal from the United States District Court for the Southern District of Mississippi
(1:95-CV-484GR)

_____

March 9, 1998

Before REYNALDO G. GARZA, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


### *Factual and Procedural Background*

Dr. Thelma Jamison, a physician and participant in the National Health Service Corps

("NHSC") Scholarship and Loan Repayment Program, entered into a loan repayment contract

with the United States Department of Health and Human Services, Public Health Service, Health

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to this Rule, the Court has decided not to publish this opinion.

1

Resources and Services Administration, Bureau of Health Care Delivery and Assistance, and the NHSC. In late 1993, the NHSC contacted the defendant, Kathryn Shanks, requesting that she employ Dr. Jamison at the Coastal Family Health Center ("Coastal") in Biloxi, Mississippi, a nonprofit corporation where Shanks served as Executive Director. The NHSC advised Shanks that they were transferring Dr. Jamison from her former job because Dr. Jamison was unable to get along with fellow employees. Shanks agreed to employ Dr. Jamison, and the NHSC assigned Dr. Jamison to work at Coastal.

The terms of Dr. Jamison's employment agreement with Coastal required Dr. Jamison to serve as a preceptor to family nurse practitioners, serve a minimum of 20 patients per day, and follow Coastal's personnel policies, procedures, and protocols. Section 1.3 of Coastal's personnel policies expressly advises employees that communications regarding Coastal's internal operations with personnel from other organizations, the media, or the general public, absent approval by the Executive Director, could result in immediate dismissal. Section 2.121 expressly advises employees that "employment may be terminated by reason of reorganization, retrenchment, or good cause." Section 2.123 provides that "[g]ood cause is defined as, but not limited to . . . insubordination[,] discourteousness to or offensive treatment of other employees[, and] [v]iolations of Personnel Policies and Procedures." Section 2.123 also provides that violation of Coastal's privacy by disclosing confidential information to unauthorized persons would result in the employee's termination. Finally, section 2.122 states that "[a]n employee may be dismissed for a single act of gross malperformance . . . ."

In addition to Coastal's personnel policies, Dr. Jamison was subject to the Guidelines for the Approval/Disapproval of Physicians Supervising Nurse Practitioners in Free-Standing Clinics

2

("Guidelines") promulgated by the Mississippi State Board of Medical Licensure. The Guidelines establish a protocol for physicians to follow when resigning as a nurse practitioner's preceptor:

> In the event a Supervising Physician is not readily available, whether due to vacation, illness or for any other reason, he/she shall provide the Nurse Practitioner with the name and means of communication with a replacement[.]

The Guidelines further provide that:

> Prior to terminating a protocol with a Nurse Practitioner, the Supervising Physician must notify the Mississippi State Board of Medical Licensure, Mississippi State Board of Nursing, and Nurse Practitioner in writing.

Dr. Jamison was fully aware of the policies and procedures of Coastal as well the policies and procedures promulgated by the State Board of Medical Licensure.

While employed at Coastal, Dr. Jamison served as preceptor for Jed Lowy, a nurse practitioner. As preceptor, Dr. Jamison executed the protocols by which Lowy performed. Dr. Jamison voiced several complaints about Lowy's attitude and performance, each of which Coastal's administration determined to be unfounded or resolved. Dr. Jamison continued to execute the protocols necessary for Lowy's performance. According to Dr. Jamison, sometime around December 19 or 20, 1994, Lowy told Dr. Jamison that Dr. Jamison would have no control over Lowy's performance. On December 21, 1994, after unsuccessfully attempting to contact her medical team leader and Coastal's Medical Director, Dr. Jamison contacted the Mississippi State Board of Nursing and the Mississippi State Board of Medical Licensure to accuse Lowy of violating protocols.

In a letter to the Mississippi State Board of Medical Licensure dated December 21, 1994, Dr. Jamison resigned as Lowy's preceptor. The following day, without advising any member of Coastal's administration, Dr. Jamison advised Lowy that she had resigned as Lowy's preceptor.

3

At the time, Dr. Jamison had not determined whether a replacement preceptor was available to supervise Lowy or whether Lowy was continuing to see patients. That afternoon, following a discussion with Jamison, Executive Director Shanks terminated Dr. Jamison's employment for breach of the employment agreement and failure to follow Coastal's policies and procedures.

In a letter dated December 22, 1994, Shanks informed the Department of Health and Human Services of Dr. Jamison's termination. In the letter, Shanks also stated that she had "strong reservations about [Dr. Jamison's] suitability for another clinic assignment." Nevertheless, the Department of Health and Human Services subsequently offered Dr. Jamison assignment to another facility in South Carolina, which Dr. Jamison declined.

On August 25, 1995, Dr. Jamison filed a complaint against Coastal in the Circuit Court of Harrison County, Mississippi, Second Judicial District. The complaint alleged that Dr. Jamison defaulted on her loan repayment contract and suffered damages in excess of $50,000 as a consequence of Coastal's alleged breach of contract, gross negligence, and willful, wanton, and retaliatory disregard for Dr. Jamison's well being. Dr. Jamison further alleged that Coastal failed to comply with the disciplinary procedures in its personnel handbook, thereby violating the employment agreement and depriving Dr. Jamison of her property rights without due process of law. On September 26, 1995, Coastal removed the suit to federal court, invoking federal question jurisdiction based on Dr. Jamison's constitutional claims. Dr. Jamison subsequently amended her complaint to add Donna Shalala, Secretary of the United States Department of Health and Human Services, as a defendant. The district court granted summary judgment in favor of all defendants on June 11, 1997. On June 30, 1997, a magistrate judge issued an order denying as moot Dr. Jamison's previously filed motion to disqualify counsel for Coastal and Shanks. On July 7, 1997,

Dr. Jamison timely appealed the district court's summary judgment and the denial of her motion to disqualify to this Court.

### *Discussion*

In this circuit, we review a district court's summary judgment *de novo. Bloom v. Bexar County*, 130 F.3d 722, 724 (5th Cir. 1997). In this context, we view the evidence in the light most favorable to the non-movant. *Id.* Summary judgment is proper if the evidence so viewed shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

Under Mississippi law, "[a]n employer may discharge an employee (even one hired for a definite term) without incurring liability if just cause exists for terminating the employment contract." *Short v. Columbus Rubber and Gasket Co.*, 535 So. 2d 61, 66 (Miss. 1988). It is not necessary for the employer to assign any specific grounds at the time of dismissal. *Id.* The existence of such grounds at the time of discharge will suffice. *Id.* The question before us, therefore, is whether just cause existed for Dr. Jamison's termination.

The summary judgment evidence showed no genuine issue of material fact with regard to the existence of just cause for Dr. Jamison's termination; therefore, the defendants were entitled to judgment as a matter of law. Coastal's personnel policies provide for termination based on a single act of gross malperformance. Although the question of whether Dr. Jamison's conduct constituted gross malperformance is a factual issue, the balance of Coastal's personnel policies clearly provides for termination based on the specific conduct in which Dr. Jamison engaged. As such, the question of whether Dr. Jamison's conduct constituted gross malperformance does not preclude summary judgment.

5

The Coastal employment agreement provided for termination based on Dr. Jamison's specific conduct; therefore, there is no genuine issue of material fact as to whether Coastal had just cause for terminating Dr. Jamison. Coastal's personnel policies, which Coastal expressly incorporated into Dr. Jamison's employment contract, provide that unauthorized communications with third parties (specifically including personnel from other organizations) regarding Coastal's internal operations could result in immediate dismissal. Furthermore, in the section defining good cause for termination, Coastal's personnel policies provide that violation of Coastal's privacy by disclosing confidential information to unauthorized persons would result in the employee's termination. Dr. Jamison violated both of these provisions by contacting outside agencies, without authorization, to accuse Lowy of violating protocols. By the express terms of Coastal's employment agreement and personnel policies, these violations alone constitute good cause for termination. Accordingly, the district court did not err in granting summary judgment.

In addition, Dr. Jamison violated the provisions of the Mississippi State Board of Medical Licensure Guidelines by not finding, or even investigating, a replacement preceptor for Lowy. Contrary to Dr. Jamison's argument, we find that the Guidelines required Dr. Jamison to provide Lowy with the name and means of communication with, i.e., an address or telephone number, a replacement preceptor. Requiring a supervising physician to arrange for a replacement where the supervising physician will be unavailable ensures that nurse practitioners will not be left in the undesirable position of being confronted with patients in need of treatment but not having a supervising physician to look to for assistance. Creating such a situation, which potentially could result in significant liability on Coastal's part, clearly constitutes good cause for disciplinary action and supports Coastal's actions in this case, particularly when combined with Dr. Jamison's breach

6

of her employment agreement and violation of Coastal's personnel policies. In addition, requiring the constant availability of a supervising physician serves the public interest by preventing unsupervised and possibly uninsured administration of medical treatment by nurse practitioners. Requiring the constant availability of a supervising physician also promotes the public interest by providing a hierarchical framework for the regulation of treatment by nurse practitioners.

Although Dr. Jamison invokes the Guidelines as requiring her to notify the Mississippi State Board of Medical Licensure and the Mississippi State Board of Nursing prior to terminating her protocol with Lowy, this requirement does not excuse her breach of her contractual obligations, her violation of Coastal's personnel policies, or her failure to find a replacement preceptor for Lowy. Dr. Jamison could have, and should have, postponed her resignation and communications to outside agencies at least until she spoke with someone at Coastal regarding her resignation and Lowy's replacement preceptor. Dr. Jamison apparently called Coastal's Medical Director, but did not even wait until the next morning for a response. Instead, she went home and called the state boards in direct contravention of Coastal's policies, and the next morning resigned as Lowy's preceptor without arranging for a replacement, in violation of the State Board of Medical Licensure Guidelines.

Furthermore, Dr. Jamison's other claims on appeal collapse in light of our finding that Coastal had just cause to terminate Dr. Jamison. The district court properly granted summary judgment in favor of the defendants on Dr. Jamison's defamation claim. As the court noted, Shanks limited publication of her letter to persons having a legitimate and direct interest in the letter's subject matter. Also, based on the existence of good cause for Coastal's termination of Dr. Jamison's employment, the district court was justified in finding that the statements in Shanks'

7

letter (i.e., that Dr. Jamison's "practice style," caused Dr. Shanks to have "strong reservations about her suitability for another clinic assignment") were made in good faith and without malice. The Mississippi Supreme Court has noted that, in the employment context, "a qualified privilege exists between those directly interested in the same matter and in the absence of malice no cause of action lies." *Staheli v. Smith*, 548 So. 2d 1299, 1306 (Miss. 1989) (quoting Hooks v. McCall, 272 So. 2d 925, 927 (Miss.1973)). As such, under Mississippi law, these statements were privileged. *See id. at* 1305-06 ("This Court recognizes a qualified privilege in the employment context. It is restricted both as to scope of and motivation for the communication."). In addition, the district court below correctly pointed out that Dr. Jamison failed to show that she was harmed by the defendants' statements because the NHSC offered Dr. Jamison a position in South Carolina which would have enabled her to continue to repay her loan. As such, the district court was correct in granting the defendants' motion for summary judgment on Dr. Jamison's defamation claim.

With regard to Dr. Jamison's constitutional claims, the district court correctly concluded that even if Dr. Jamison could meet the state action requirement of a due process claim, Coastal's just cause for termination would defeat Dr. Jamison's claim. The same applies here, despite Dr. Jamison's argument that she was entitled to a hearing before Coastal could terminate her employment. It was incumbent upon Dr. Jamison to request a due process hearing as a prerequisite to her asserted due process claim. *See Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (proof of property interest would obligate employer to "grant a hearing at his (plaintiff/employee's) request"), *overruled on different grounds*, *Rust v. Sullivan*, 500 U.S. 173 (1991); *Franks v. Magnolia Hosp.*, 888 F. Supp. 1310, 1316 (N.D. Miss. 1995) ("In cases

8

involving a liberty interest, the case law clearly requires an employee to request a due process hearing. . . . In light of the Supreme Court's language in *Perry*, the court sees no reason why an employee with a property interest claim should not be held to the same standard."), *aff'd*, 77 F.3d 478 (5th Cir. 1996); *Robinson v. Houston-Galveston Area Council*, 566 F. Supp. 370, 379 (S.D. Tex. 1983) (due to finding of court that plaintiffs had property interest, employer is obligated to grant hearing at their request). As noted in *Franks*, "the plaintiff should not be permitted to sit on her hands and then complain to the court that she was not given an express opportunity to question her discharge." 888 F. Supp. at 1316.

Dr. Jamison responds that she immediately retained an attorney who sent a letter to Coastal demanding Dr. Jamison's reinstatement; however, Dr. Jamison does not argue that this letter requested a hearing to rebut the charges against Dr. Jamison. This Court has held that:

> An employer's denial of an employee's request to appeal the employer's discharge decision, which rested on guilt of the stigmatizing charge, is a denial of a name-clearing hearing unless the employer specifically notifies the employee of the availability of an alternative procedure, which will provide the employee with a public forum to clear his name before the governing body that discharged him.

*Rosenstein v. City of Dallas*, 876 F.2d 392, 396 (5th Cir. 1989), *modified*, 901 F.2d 61 (5th Cir.), *cert. denied sub nom., City of Dallas v. Rosenstein*, 498 U.S. 855 (1990). The Court noted, however, that the necessary procedure could be "solely for the purpose of allowing the employee to clear his name [of the stigmatizing charge]." *Id.* The Court distinguished an appeal of a dismissal from a name-clearing hearing: "[T]he process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." *Rosenstein*, 876 F.2d at 395 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 n.12 (1972)). The Court's characterization was based on the

9

proposition that "it is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteen Amendment to a procedural opportunity to clear one's name." In contrast, Dr. Jamison is alleging that Coastal's termination of her employment constituted a *property* deprivation, as opposed to arguing that she was deprived of a *liberty* interest in a name-clearing hearing.

Furthermore, the attorney's letter demanding Dr. Jamison's reinstatement was not the equivalent of a request for a hearing because there was no need, as there was in *Rosenstein*, for Dr. Jamison to clear her name of some stigmatizing, defamatory charges made in connection with her discharge. Coastal terminated Dr. Jamison for just cause and Dr. Jamison did not request a hearing. As such, the district court correctly found that Coastal afforded Dr. Jamison all process due under the law.

### *Conclusion*

The summary judgment evidence undeniably shows that Coastal terminated Dr. Jamison's employment for just cause in accordance with Mississippi law, Coastal's employment contract with Dr. Jamison, and Coastal's personnel policies. The summary judgment evidence also shows that the district court properly granted summary judgment in the defendants' favor on Dr. Jamison's defamation claim. In addition, Coastal afforded Dr. Jamison all process due under the law. Dr. Jamison's remaining contentions on appeal relating to questions of damages, mitigation, and the denial of her motion to disqualify counsel for the defense are moot in light of our finding that the district court properly granted summary judgment in the defendants' favor on the questions of liability. Accordingly, we hereby AFFIRM the decision below.

10

AFFIRMED.